IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No: 09-cv-01474-RPM-MJW

JAY HOLLAND and
ALISSA DANIELSON-HOLLAND,

Plaintiffs,

v.

STANDLEY AND ASSOCIATES, LLC,

Defendant.

---

**RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Docket No. 56)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case was referred to the undersigned pursuant to an Order of Reference to

Magistrate Judge issued by Senior District Judge Richard P. Matsch  on June 26, 2009.

(Docket No. 2).

The operative pleading is the First Amended Complaint (Docket No. 28) in which

the plaintiffs, through counsel, allege violations of the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and an invasion of privacy claim.  Plaintiffs assert

the following in that pleading.  Defendant contacted plaintiffs in an attempt to collect an

outstanding debt.  Defendant's conduct which violated the FDCPA included the

following: (1) threatening to take action by stating in a written communication that he

was "prepared to move forward" on the debt even though he was not an attorney and

not capable of "moving forward" past anything other than attempting to collect a debt;

(2) failing to unambiguously notify plaintiffs of the identity of the current creditor in either

the initial communication or in writing within five days thereof; (3) falsely representing

that an individual is an attorney, including using the confusing title of "legal manager" for

a non-attorney debt collector; (4) causing plaintiffs' telephone to ring on at least two

occasions immediately after plaintiff terminated the call with the intent to annoy, abuse,

or harass plaintiffs; (5) using language, the natural consequence of which was to abuse

plaintiff, including telling her that she should "go get a job" even though she is a stay-at-

home mother; and (6) threatening to take action that could not be legally taken,

including threatening to garnish plaintiff's wages prior to defendant having filed a

complaint or obtaining judgment on the underlying debt.  Plaintiffs seek a declaratory

judgment plus actual, punitive, and statutory damages, costs, and attorney fees.

     Now before the court for a report and recommendation is the Defendant's Motion

for Summary Judgment (Docket No. 56).   Plaintiffs filed Plaintiffs' Response to

Defendant's Motion for Summary Judgment and Request for Relief as a Matter of Law

(Docket No. 65) in which they seek denial of the defendant's motion and judgment with

regard to the issues presented as a matter of law.  Defendant filed a Reply (Docket No.

73).  The court has considered these motion papers, the exhibits attached thereto, the

court's file, and applicable Federal Rules of Civil Procedure and case law.  The court

now being fully informed makes the following findings, conclusions of law, and

recommendation.

     Rule 56(a) provides that summary judgment shall be granted "if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party seeking summary

judgment bears the initial responsibility of informing the district court of the basis for its

motion, and identifying those portions of the pleadings, depositions, interrogatories, and

admissions on file together with affidavits, if any, which it believes demonstrate the

absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the

County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494

(10th Cir. 1992)).  "Once a properly supported summary judgment motion is made, the

opposing party may not rest on the allegations contained in the complaint, but must

respond with specific facts showing the existence of a genuine factual issue to be tried. .

. .  These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule

56(c), except the mere pleadings by themselves.'"  Southway v. Central Bank of Nigeria,

149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).

However, "[i]n order to survive summary judgment, the content of the evidence that the

nonmoving party points to must be *admissible*. . . .  The nonmoving party does not have

to produce evidence in a form that would be admissible at trial, but '"the content or

substance of the evidence must be admissible."' . . .  Hearsay testimony that would be

inadmissible at trial cannot be used to defeat a motion for summary judgment because

'a third party's description of a witness' supposed testimony is "not suitable grist for the

summary judgment mill."'"  Adams v. American Guarantee & Liability Ins. Co., 233 F.3d

1242, 1246 (10th Cir. 2000).

     "Summary judgment is also appropriate when the court concludes that no

reasonable juror could find for the non-moving party based on the evidence presented

in the motion and response." <u>Southway</u>, 149 F. Supp.2d at 1273.  "The operative

inquiry is whether, based on all documents submitted, reasonable jurors could find by a

preponderance of the evidence that the plaintiff is entitled to a verdict. . . .  Unsupported

allegations without 'any significant probative evidence tending to support the complaint'

are insufficient . . . as are conclusory assertions that factual disputes exist."  <u>Id.</u>;

<u>Robertson</u>, 78 F. Supp.2d at 1146 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

250 (1986); quoting <u>White v. York Int'l Corp.</u>, 45 F.3d 357, 360 (10th Cir. 1995)).

"Evidence presented must be based on more than 'mere speculation, conjecture, or

surmise' to defeat a motion for summary judgment."  <u>Southway</u>, 149 F. Supp.2d at

1274.  "Summary judgment should not enter if, viewing the evidence in a light most

favorable to the non-moving party and drawing all reasonable inferences in that party's

favor, a reasonable jury could return a verdict for that party."  <u>Id.</u> at 1273.

The FDCPA "imposes civil liability on 'debt collector[s]' for certain prohibited debt

collection practices."  <u>Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA</u>, 130 S.

Ct. 1605, 1608 (2010).  Here, defendant has separately addressed each of the six

categories of alleged violations of the FDCPA.  The court will address them seriatim.

**1.  Collector threatening that he was "prepared to move forward."**

The FDCPA prohibits the use of "any false, deceptive, or misleading

representation or means in connection with the collection of any debt."  15 U.S.C. §

1692e.  The statute includes a non-exhaustive list of practices that fall within such

prohibited conduct, including "[t]he threat to take any action that cannot legally be taken

or that is not intended to be taken."  15 U.S.C. § 1692e(5).  That subsection has been

found to have been violated when a defendant asserted that "it *could* take an action that

it had no intention of taking and has never or very rarely taken before."  Brown v. Card

Serv. Center, 464 F.3d 450, 455 (3d Cir. 2006).  Where the clear import of a

communication can be taken as a whole to mean "that *some* type of legal action has

already been or is about to be initiated and can be averted from running its course only

by payment" and where the referenced action is not taken or cannot be taken, a

violation of § 1692e(5) has been established.  Pipiles v. Credit Bureau of Lockport, Inc.,

886 F.2d 22, 25-26 (2d Cir. 1989).  See Bentley v. Great Lakes Collection Bur., 6 F.3d

60 (2d Cir. 1993) (references to post-judgment proceedings of attachment and

garnishment where the debt collector was not authorized to proceed would mislead the

least sophisticated consumer that the debt collector would take action not intended to

be taken); Baker v. C. G. Servs. Corp., 677 F.2d 775, 779 (9th Cir. 1982) (violation of §

1692e(5) where the communication "create[d] the impression that legal action by

defendant is a real possibility . . . (and) a consumer could legitimately believe that

'further collection procedures' meant court action when defendant had no intention of

pursuing such a course of action.'").  Alleged violations of § 1692e are evaluated under

the least sophisticated debtor standard.  Donohue v. Quick Collect, Inc., 592 F.3d 1027,

1030 (9th Cir. 2010); Elliott v. Credit Control Servs., Inc., 2010 WL 195402 (S.D.Cal. Apr.

14, 2010) (Def.'s Ex. A-16).  "'[T]he test is how the least sophisticated consumer-one

not having the astuteness of a "Philadelphia lawyer" or even the sophistication of the

average, everyday, common consumer-understands the notice he or she receives.'"

Feree v. Marianos, 129 F.3d 130 (10th Cir. 1997) (table) (quoting Russell v. Equifax

A.R.S., 74 F.3d 30, 34 (2d Cir. 1996)).  "The hypothetical consumer, however, 'can be

presumed to possess a rudimentary amount of information about the world and a

6

willingness to read a collection notice with some care.'" Id. (quoting Clomon v. Jackson, 988 F.2d 1314, 1319 (2d Cir. 1993)).

In the First Amended Complaint, plaintiffs here claim the defendant violated the FDCPA by threatening to take an action against plaintiff that could not have been taken, in violation of § 1692e(f), when he made the statement below that he was "prepared to move forward" on the debt even though he was not an attorney and was not capable of "moving forward" past anything other than attempting to collect a debt. (Docket No. 28, First Amended Compl. at 2-3).

Two letters were sent to the plaintiff by the defendant's collector, Brian Quintana. Both letters are on the letterhead of the defendant, Standley and Associates, LLC, Attorneys at Law, and are signed by Quintana, who is identified by the title of "Legal Manager." The first letter is dated February 26, 2009, and states that it is regarding "GTF Services, LLC. Original Creditor: US Bank, Account # DDA 103670719618, File #: 14267, Balance: $3,414.41." (Docket No. 65-1 at 2). The body of the letter reads as follows:

> Dear Alyssa:
>
> The above referenced account has been referred to this office for recovery. Our client has instructed us to proceed with litigation if satisfactory arrangements cannot be made.
>
> Our client indicates that they have a valid claim against you, which is delinquent. They have stated that you are in default of an original amount of $2,124.40. Pursuant to your contract with US Bank, the original creditor, interest in the amount of $971.35 has accrued against this debt as well as attorneys fees in the amount of $318.66 have also been added.
>
> If you would like to resolve this claim with payment, please contact our office.

7

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

A consumer has the right to request in writing that a debt collector or collection agency cease further communication with the consumer.  A written request to cease communication will not prohibit the debt collector or collection agency from taking any other action authorized by the law to collect the debt.

(Docket No. 65-1 at 2).

The second letter to plaintiffs from Mr. Quintana is dated March 30, 2009, and

states:

Dear Alyssa:

Pursuant to your request, enclosed please find a copy of the Affidavit of Indebtedness from US Bank regarding your account.  In addition, enclosed please find four pages from the US Bank account holders agreement (the "Agreement") that establishes your rights and obligations regarding this matter as follows:

1.      By signing a signature card on your account with US Bank, you agreed to all of the terms and conditions of the Agreement;

2.      As stated on page 18 of the Agreement, you had 30 days to contest any charges to your account that you did not feel were proper and you had 1 year to file suit against any US Bank regarding any charges that you did not agree with, or you waived your right to recover for any charges that you did not agree with;

3.      You agreed to pay the finance charge assessed on pages 41 and 42 of the Agreement;

4.      You agreed to pay attorneys fees as provided on page 43 of the Agreement.

The address for the original creditor is Corporate Headquarters, U.S. Bancorp, U.S. Bancorp Center, 800 Nicollet Mall, Minneapolis, MN 55402.

8

> Please review the enclosures and contact our office at your earliest convenience to discuss resolution of this matter without the need for costly and time consuming litigation.  Your prompt response is anticipated.

(Docket No. 65-2 at 2).  A hand-written note by Mr. Quintana on that letter states, "enclosed is 2 pages of your statement.  I have 35 more to support this debt.  At this time I am prepared to move foward [sic]."  (Docket No. 65-2 at 2).

Defendant asserts that it is undisputed that Mr. Quintana, the legal manager for the defendant Standley & Associates, LLC, is not an attorney.  Furthermore, there is no indication on either of the letters he sent to the plaintiffs dated February 26, 2009, or March 30, 2009 (Def.'s Ex. A-1 and A-2), that he is an attorney.  In addition, in his deposition testimony, Mr. Quintana made it very clear that he could not file any lawsuit because he is not an attorney, and he explained that "moving forward" simply meant showing the file to Mr. Standley and letting him determine whether to file suit.  (Def.'s Ex. A-3).  Defendant further asserts that it is clear from the letterhead that the two letters were from a law office and that the fact that Mr. Quintana himself may not be able to file a lawsuit is not determinative of whether the law firm, representing a creditor, could do so.  It is asserted that it is undisputed that Mr. Quintana could have Mr. Standley view the file and determine what to do next and that there is no evidence that the plaintiffs relied in any way to their detriment on Mr. Quintana's written representation that he was prepared to move forward.  Furthermore, defendant asserts that the statement that their client had instructed them to proceed to litigation if satisfactory arrangements cannot be made was a statement of the creditor's rights.  In addition, litigation was not only contemplated, it was actually utilized.  Defendant asserts that the "moving forward" language is certainly less threatening than "proceed to litigation."

Defendant also asserts that courts have denied recovery where letters are merely

statements of the creditor's rights, rather than pronouncements that the collection agent

can and will institute legal action on its own initiative.  <u>Madonna v. Academy Collection</u>

<u>Serv., Inc.</u>, 1997 WL 530101, at *6-7 (D. Conn. Aug. 12, 1997) (finding that the

statement "failure to comply may result in our informing our client that you have refused

to cooperate, and they may pursue legal action" was not a threat to pursue legal action

by the debt collector); <u>Leone v. Ashwood Fin., Inc.</u>, 257 F.R.D. 343, 348-49 (E.D.N.Y.

2009) (finding a threat where the collection agency did not have authority to proceed);

<u>Knowles v. Credit Bur. of Rochester</u>, 1992 WL 131107, at *1 (W.D.N.Y. May 28, 1992)

(finding that "failure to pay will leave our client no choice but to consider legal action"

"threatens no action whatsoever").  According to defendant, here, the evidence is that

defendant could proceed as necessary.  (Def.'s Ex. A-3, A-6, and A-7).

     In response, plaintiffs assert that

> [t]he sometimes imprecise nature of Defendant's warnings regarding
> potential litigation, in connection with the deliberate manner in which they
> were presented to Plaintiff, makes it very reasonable that the least
> sophisticated consumer, confronted with the same, would assume that
> failure to heed Defendant's warning would result in the initiation of
> imminent litigation by Defendant. . . .
>
> . . .
>
>     The least sophisticated debtor, receiving Defendant's warnings
> regarding litigation - in the form of express references to legal action, as
> well as statements from a "legal manager" such as "I am prepared to
> move forward," – would reasonably associate a failure to act in
> accordance with Defendant's warnings with a real possibility the
> Defendant would abruptly initiate a lawsuit as a result of such failure.
>
>     Defendant's threats do not impart to the least sophisticated
> consumer a metaphysical possibility that someone, somewhere, may file a
> lawsuit to collect the debt that Plaintiff is alleged to have once owed US

>Bank, but in context, denote a reasonable likelihood that Defendant will
>hastily initiate legal action to collect the debt alleged due should Plaintiff
>fail to pay as requested.  The ordinary connotations and implications of
>Defendant's warning of potential litigation, absent any qualification,
>conveys to the least sophisticated consumer, at a minimum, an implication
>that Defendant will file a lawsuit against Plaintiff without delay to collect the
>debt alleged due should Plaintiff fail to make payment as demanded by
>Defendant.

(Docket No. 65 at 11-12).

This court finds that defendant is entitled to summary judgment on this claim because there has been no showing of a violation of § 1692e(5).  That section prohibits making a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5).  Here, Quintana testified that he meant that he would show the file to Mr. Standley, an officer and owner of the defendant, Standley and Associates, LLC.  Even if a least sophisticated consumer could construe the statement alone or along with the letter as a whole as a threat to take legal action, such a "threat" was not idle, was not one that could not be legally taken by the defendant, or one that was not intended to be taken.  Although Quintana is not an attorney, the letters were on defendant's letterhead, and Mr. Standley states in his affidavit that he personally reviews all of the files and the information provided by their clients prior to collection efforts being undertaken on any new files in the office and that he drafted all of the collection letters that go out of his office, including those that were sent to the plaintiffs. (Docket No. 73-1).  Furthermore, legal action was taken in this case.  It is undisputed that an action was brought in Jefferson County, which the plaintiffs here lost.  In sum, this court finds that the undisputed evidence establishes that there was no false, deceptive, or misleading representation or means in connection with the collection of

11

any debt as a result of the statement about being prepared to go forward.

### 2.  Failing to unambigiously notify plaintiffs of the creditor's identity.

Section 1692g(a) provides that unless not contained in the initial communication

or the consumer has paid the debt, "within five days after the initial communication with

a consumer in connection with the collection of any debt, a debt collector shall . . . send

the consumer a written notice containing" the following information:

> (1) the amount of the debt;

> (2) the name of the creditor to whom the debt is owed;

> (3) a statement that unless the consumer, within thirty days after receipt of
> the notice, disputes the validity of the debt, or any portion thereof, the debt
> will be assumed to be valid by the debt collector;

> (4) a statement that if the consumer notifies the debt collector in writing
> within the thirty-day period that the debt, or any portion thereof, is
> disputed, the debt collector will obtain verification of the debt or a copy of
> a judgment against the consumer and a copy of such verification or
> judgment will be mailed to the consumer by the debt collector; and

> (5) a statement that, upon the consumer's written request within the thirty-
> day period, the debt collector will provide the consumer with the name and
> address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).  The information required pursuant to that section must be

conveyed "clearly and effectively" in such a manner that the least sophisticated

consumer is not "uncertain as to her rights."  Savino v. Computer Credit, Inc., 164 F.3d

81, 85 (2d Cir. 1988).  Section 1692g violations are also evaluated under the least

sophisticated debtor standard.  Donohue, 592 F.3d at 1030.

Here, plaintiffs claim in the First Amended Complaint that the defendant violated

the FDCPA by failing to unambiguously notify plaintiffs of the identity of the current

creditor in either the initial communication or in writing within five days thereof.  Plaintiffs

12

state that the February 26, 2009, letter made reference to "GTF Services" without identifying such entity as a past or present creditor and further referenced "US Bank" as the "Original Creditor."  Plaintiffs contend that such references do not comply with § 1692g(a)(2) and are unclear, ambiguous, and engendered confusion among plaintiffs as to the identity of the party to whom the alleged debt was owed.  (Docket No. 65 at 22).

Defendant asserts, however, that it is undisputed that the plaintiffs were in fact provided with the information they requested and which let them know the name of the current creditor of the debt.  According to the defendant, it is undisputed that the plaintiffs received the February 26, 2009, letter from the defendant (Def.'s Ex. A-1) which has on it the amount of the debt, the name of the creditor, and the other requirements set forth above.  Furthermore, during her deposition, Mrs. Holland agreed that she received the letter and read it.  (Def.'s Ex. A-4).  In addition, in answers to interrogatories, plaintiff's admitted that their debt to US Bank pursued by the defendant was a valid debt.  (Def.'s Ex. A-5).  Therefore, defendant asserts that it is undisputed based on the February 26, 2009, letter, Mrs. Holland's answers to interrogatories, and the plaintiff's responses to the requests for admissions that the defendant's initial correspondence was consistent with the requirements of 15 U.S.C. § 1692g(a).

Plaintiffs respond that defendant's reliance on plaintiffs' admission in their interrogatories that the debt was "valid"is misplaced and irrelevant because the issue is not whether the debt is valid or whether plaintiffs requested validation but whether defendant satisfied the disclosure requirements of § 1692g(a).  According to plaintiffs, defendant simply failed to notice them of the *current* creditor in a clear and unambiguous manner as required, and thus was in violation of the FDCPA.

13

A review of the first letter sent by defendant to the plaintiffs, however, shows that it complied with the requirements of § 1692g(a).  In the subject line of the letter, the defendant listed GTF Services, LLC, as well as the identity of the original creditor (US Bank), the account number, the file number, the total balance, and the amount of the original debt, the accrued interest, and attorney fees are contained in the body of the letter.  Such information complies with the requirements of § 1692g(a) and conveyed the requisite information clearly and effectively in such a manner than the least sophisticated consumer would not be uncertain as to her rights.  Summary judgment should thus enter for defendant on this claim.

**3.  Falsely representing that an individual is an attorney.**

Plaintiffs next assert in the First Amended Complaint that the defendant violated the FDCPA by falsely representing or implying that Mr. Quintana was an attorney, including using the confusing title of "legal manager" for a non-attorney debt collector. Defendant, however, responds that it is undisputed that Brian Quintana is not an attorney; his job was to manage other collectors and to review and sign the letters that go out.  Defendant asserts that neither letter sent to the plaintiffs has any language that indicates that Quintana is an attorney and that the deposition testimony of Quintana and Mr. Standley show that Quintana is not a lawyer, did not hold himself as being a lawyer, and there was lawyer oversight and involvement in the pursuit and collection of the plaintiffs' debt.   With respect to the latter, defendant has submitted with its Reply an affidavit of attorney James J. Standley, the officer and owner of defendant Standley and Associates, LLC.  As noted earlier, Standley states that "[p]rior to collection efforts being undertaken on any new files in this office, I personally review all of the files and the

information provided by our creditors" and that he "drafted all of the collections letters that go out of [his] office, including the ones sent to the [plaintiffs]." (Docket No. 73-1 at ¶¶ 3-4). Furthermore, according to defendant, it is undisputed that Standley & Associates, LLC, filed a lawsuit on behalf of GTF Services, LLC; the matter went to trial; the plaintiffs here lost; and they have since paid that judgment. Quintana testified during his deposition that his only discussion with the plaintiffs was <u>after</u> any judgment entered in the Jefferson County matter regarding the underlying debt.

Defendant correctly asserts that a misleading statement must be material in order to be actionable under § 1692e. <u>See</u> <u>Donohue</u>, 592 F.3d at 1033. "[F]alse but nonmaterial representations are not likely to mislead the least sophisticated consumer." <u>Id.</u> The reason for the materiality standard is that "[i]n assessing FDCPA liability, we are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." <u>Id.</u> at 1034. Here, defendant asserts that it is clear that the plaintiffs chose what they wanted to do and that none of the alleged misrepresentations that they claim frustrated their ability to choose intelligently their response to the defendant's stated intentions to collect the valid debt against them. Defendant contends that the plaintiffs have offered no evidence that even if the term "legal manager" is somehow a falsehood, it is anything more than a technical falsehood that misleads no one. This court agrees with the defendant, and it is thus recommended that summary judgment be entered for the defendant on this claim as well.

**4. Causing plaintiffs' telephone to ring.**

15

The FDCPA proscribes certain debt collector conduct for which the natural consequence "is to harass, oppress, or abuse any person in connection with the collection of a debt," 15 U.S.C. § 1692d, and such prohibited conduct includes "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."  15 U.S.C. § 1692d(5).  Plaintiffs here claim in the First Amended Complaint that the defendant violated the FDCPA by causing plaintiffs' telephone to ring on at least two occasions immediately after plaintiff terminated the call with the intent to annoy, abuse, or harass plaintiffs.

Defendant asserts that this is a factual argument because defendant agrees that had it occurred, it would be a violation.  However, defendant denies it occurred and asserts that the plaintiff has no credible evidence that it did occur.  More specifically, defendant asserts that it is undisputed that the plaintiffs are unable to determine when or how this may have happened.  Defendant points out that in their answers to interrogatories (Def.'s Ex. A-12, Interrog. 2 and 13), plaintiffs have given contradictory answers as to when these calls may have taken place, and when plaintiffs were confronted with their own phone bills at their depositions, neither were able to determine when or from whom any such calls may have occurred on or about the dates they say this event occurred.  Defendant contends that Mr. Holland's deposition testimony on this point is telling because he cannot identify the calls that allegedly occurred.  (Def.'s Ex. A-11).  According to the defendant, Mrs. Holland had the same difficulty during her deposition.  When asked to take as much time as necessary to find the alleged offending calls, she could not do so.  When specifically asked to identify incoming calls

16

to either her own or her husband's cell phones on any of the dates that she might have

thought that the alleged offending calls were made, Mrs. Holland was unable to do so.

According to the defendant, as of the time of the filing of the summary judgment motion,

there has been no supplemented discovery on this point.  Defendant asserts that the

plaintiffs have failed to produce any evidence to support their allegation that the

defendant or the defendant's agent made the calls alleged in their Complaint, let alone

that any such calls, even if made, were done to harass or annoy the plaintiffs.  As such,

it is asserted that the evidence is undisputed that no such calls were made.

In their Response, the plaintiffs did not address this claim and/or the defendant's

arguments with respect to this claim.  Plaintiffs have not controverted defendant's

showing that there is no evidence to support plaintiffs' claim that these calls were even

made to them.  Plaintiffs have confessed this portion of the defendant's motion, and it is

thus recommended that summary judgment be granted to the defendant on this claim.

### 5.  Abusive Language.

Section 1692d also proscribes "[t]he use of obscene or profane language or

language the natural consequence of which is to abuse the hearer or reader."  15

U.S.C. § 1692d(2).  Plaintiffs here claim in the First Amended Complaint that the

defendant violated the FDCPA by using language, the natural consequence of which

was to abuse plaintiff, including telling her that she should "go get a job" even though

she is a stay-at-home mother.  Ms. Holland testified at her deposition with regard to this

claim as follows:

> That was approximately sometime in March or April, and it was in a phone
> conversation where he asked me what I did for a living and where I
> worked, and I said I stay home with my son.  And then he went on to ask

17

> where my husband worked, because I was assuming they were trying to
> gather information, and I said I wasn't going to give them that information.
> And then after a short pause, he told me that maybe I should go out and
> get a job, to those – to that effect.  And that — after that, he said, well —
> sometime in that conversation as well, he said they would find out where
> my husband works and garnish his wages.

(Pls.' Ex. C, p. 20, lines 19-25; p. 21, lines 1-3).

Defendant asserts that this is a factual argument because defendant agrees that had it occurred, it would be a violation.  However, defendant denies it occurred and asserts that the plaintiff has no credible evidence that it did occur (citing the responses to the plaintiff's interrogatories (Def.'s Ex. A-14, interrog. 21) and Mr. Quintana's deposition testimony (Quintana Dep. Trans. At 41-42)).  Defendant further asserts that the plaintiffs have failed to identify properly the individual with whom they spoke prior to having the judgment enter against them in Jefferson County.  Defendant contends that both plaintiffs appear not only confused, but incorrect about which conversations happened when.  Furthermore, Mr. Quintana testified at his deposition that he had no contact with the plaintiffs until after the judgment in the underlying case, and that was to discuss with Mr. Holland how best to clear the judgment.

At the very least, there is a disputed issue of fact concerning whether abusive language was made toward plaintiff.  Therefore, it is recommended that the defendant's motion be denied with respect to this claim.

### 6.  Threatening to take action that could not be taken.

Plaintiffs' final claim of a FDCPA violation by defendant is that he threatened to take action that could not be legally taken, including threatening to garnish plaintiff's wages prior to defendant having filed a complaint or obtaining judgment on the

underlying debt.  Defendant asserts that this is a factual argument because defendant

agrees that had it occurred, it would be a violation.  However, defendant denies it

occurred (citing Def.'s Ex. A-14, interrog. 22; and A-15, Quintana's Dep. Trans.) and

asserts that the plaintiff has no credible evidence that it did occur.  Defendant further

asserts that the plaintiffs have failed to identify properly the individual with whom they

spoke prior to having the judgment enter against them in Jefferson County.  Defendant

contends that both plaintiffs appear not only confused, but incorrect about which

conversations happened when.  Furthermore, Mr. Quintana testified at his deposition

that he had no contact with the plaintiffs until after the judgment in the underlying case,

and that was to discuss with Mr. Holland how best to clear the judgment.

In their Response, the plaintiffs did not address this claim and/or the defendant's

arguments with respect to this claim.  Therefore, the plaintiffs have confessed this

portion of the defendant's motion.  It is thus recommended that summary judgment be

granted to the defendant on this claim.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the defendant's Motion for Summary Judgment (Docket

No. 56) be granted in part and denied in part.  More specifically, it is recommended that

the motion be granted with respect to all claims except plaintiffs' claim about alleged

abusive language during a purported telephone call during which a comment was

allegedly made telling plaintiff Alyssa Holland to get a job.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2),**

**the parties have fourteen (14) days after service of this recommendation to serve**

and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).


Date:  March 4, 2011                              s/ Michael J. Watanabe
       Denver, Colorado                          Michael J. Watanabe
                                                 United States Magistrate Judge